NOT FOR PUBLICATION                                              (Doc. No. 35)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                    :
KUMON NORTH AMERICA, INC.,          :
                                                    :
                                                    :          Civil No. 13-4809 (RBK)
                               Plaintiff,         :
                                                    :
              v.                                  :          **OPINION**
                                                    :
DEMETRIO TIMBAN                         :
                                                    :
                               Defendant.       :
_____ :

**KUGLER**, United States District Judge:

This matter arises out of Kumon North America, Inc.'s ("Kumon's") motion for

attorneys' fees and costs.  (Doc. No. 35.)  Demetrio Timban ("Mr. Timban") challenges a portion

of these fees.  For the foregoing reasons, Kumon's motion will be **GRANTED WITH**

**MODIFICATION**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This action arises out of Mr. Timban's refusal to cease operating a formerly franchised

Kumon Math & Reading Center (the "Medford Center") following the termination of his

Franchise Agreement.  On August 12, 2013, Kumon moved for a temporary restraining order and

preliminary injunction to enjoin Mr. Timban from trademark infringement and unfair

competition, and also to order him to comply with his post-termination contractual obligations.

(Kumon Mot. Prelim. Inj. at 23, Doc. No. 8.)  On August 26, 2013, the Court granted in part

Kumon's motion and enjoined Mr. Timban from continuing to operate the Kumon Center and

from using Kumon Marks or any trademark similar to the Kumon Marks.  The Court further ordered Mr. Timban to deliver all items in his possession bearing the Kumon Marks to Kumon. (Order (the "August 26 Order"), Doc. No. 15.)  The Court denied the portion of Kumon's motion seeking to enforce the parties' covenant not to compete.  (Id.)

On September 18, 2013, Kumon filed a motion to hold Mr. Timban in contempt arguing that he had violated the August 26 Order.  (Kumon Mot. Contempt, Doc. No. 24.)  In support of its motion, Kumon submitted affidavits and a video recording prepared by investigators it retained to conduct a site visit of the Medford Center.  During this site visit, the investigators discovered that Mr. Timban and his associates had continued to use the Kumon marks, name, and instructional materials in connection with the operation of the Medford Center, and continued to represent that the Medford Center was affiliated with Kumon.  (Id.)

The Court heard oral arguments on October 11, 2013, and found that Mr. Timban was in contempt of the August 26 Order.  (Order (the "October 15 Order"), Doc. No. 31.)  Accordingly, the Court granted Kumon's motion to hold Mr. Timban in contempt and awarded Kumon attorneys' fees and costs incurred as a result of:  (1) Kumon's removal of Kumon signage at the Medford Center; (2) Kumon's use of investigators to document the extent of Mr. Timban's noncompliance with the August 26 Order; and (3) the costs and fees incurred in the prosecution of Kumon's motion to hold Mr. Timban in contempt.  (Id.)

As ordered, Kumon filed an application with the Court detailing its costs and attorneys' fees and requested that the Court approve reimbursement for $14,498.50 in attorneys' fees and $6,252.77 in costs.  (Kumon Mot. Att'ys Fees, Doc. No. 35.)  Mr. Timban filed a late opposition to Kumon's motion on December 17, 2013.  (Timban Opp'n Br. 6, Doc. No. 40.)

## II.   LEGAL STANDARD

Attorneys' fees and expenses may be awarded to a successful party in litigation where authorized by statute, court rule, or contract.  Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F. Supp. 2d 480, 484 (D.N.J. 1998).  Indeed, it is within the courts' "inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt."  Halderman by Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 941 (3d Cir. 1994) (citing Robin Woods Inc. v. Woods, 28 F.3d 396, 400-401 (3d Cir. 1994)).  Accordingly, a party that has succeeded in securing an adjudication of contempt is entitled to be made whole for the losses incurred as a result of a contemnor's violations, Halderman, 49 F.3d 939 at 941, which includes the expense of investigating the demonstrated violation of the court order at issue and expenses related to any related contempt proceeding, including attorneys' fees, Robin Woods Inc., 28 F.3d at 400.

## III.   DISCUSSION

### A.  Cheng Cohen, LLC

Mr. Timban challenges a number of billing entries submitted in connection with the work performed by Cheng Cohen—Kumon's attorneys—on Kumon's motion to hold Mr. Timban in contempt.  Specifically, he takes issue with Cheng Cohen's bills for September 12, 13, 14, 16, 17, and 25, 2013, as well as October 3, 4, 7, 8, 9, 10, and 11, 2013.  The Court will address each challenged date in turn.

1.  <u>September 12, 2013</u>

Kumon represents that Cheng Cohen performed the following work on September 12:

| 9/12/2013 | ALS | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter | t | 1.0000 | 175.0000 | 175.00 |
|---|---|---|---|---|---|---|
| | | Researched contempt motion where franchisee<br>violates preliminary injunction and reconsideration for<br>non-compete clause | | | | |
| 9/12/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter | t | 2.3000 | 315.0000 | 724.50 |
| | | Work on motion for order to show cause and<br>reconsideration on non-compete, including drafting<br>motion and investigator declaration, discussing<br>same with client, and teleconference with<br>investigator | | | | |

(<u>See</u> Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban requests that both of these billing entries be "reduced considerably" because Kumon was entitled to receive reimbursement in connection with the contempt hearing in this matter, and not in connection with an order to show cause.  Further, Kumon's motion vis-à-vis the covenant not to compete was denied by the Court, and also not within the scope of the October 15 Order awarding Kumon attorneys' fees and costs.  (Timban Opp'n Br. 2, Doc. No. 40.)

Kumon claims although Cheng Cohen's bills reference a motion for an order to show cause, at the time "the motion to hold defendant in contempt was in its initial stages [and] conceptualized as a motion for an order to show cause"; accordingly, the Court should not disturb this billing entry because it accounts for work that is reimbursable according to the October 15 order.  (Kumon Resp. in Supp. of Contempt Mot., Doc. No. 42.)  The Court declines to take Kumon up on its offer.  Simply, without a supporting affidavit that Cheng Cohen was in fact characterizing the "contempt motion" as an "order to show cause," the Court will not order Mr. Timban to pay attorneys' fees that appear to fall outside of the scope of the October 15 Order.  Mr. Timban will remain responsible, however, for ALS's work on the contempt motion.  (<u>See</u> Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Accordingly, the Court will reduce ALS's

total time to 0.5 hours and Mr. Timban will owe Kumon $87.50 for ALS's work on this date. See, e.g., A.V. v. Burlington Twp. Bd. of Educ., No. 06-1534, 2007 WL 1892469, at *10 (D.N.J. 2007) (finding that the attorneys' fees could be reduced by half since it could be "reasonably estimated that one-half of the claimed hours were devoted exclusively to [issue on] which Plaintiffs did not succeed, and [thus] those hours [could be] excluded from recovery").

As for MCM's work performed on September 12, the Court finds that this time should be deducted in full because MCM's work was in furtherance of "[an] order to show cause and reconsideration on non-compete," and not Kumon's motion for contempt.  (See Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  For the reasons stated above, the Court declines to pass these fees along to Mr. Timban.  See Apple Corps. Ltd., 25 F. Supp. 2d at 487 (finding that the Court should "disallow" recovery for "entries that list multiple tasks or which lack the specificity necessary for the Court to determine whether the hours were expended in connection with the contempt motion").

Based on the foregoing, Mr. Timban must pay Kumon $87.50 for Cheng Cohen's work performed on September 12.

2. <u>September 13 and 14, 2013</u>

Kumon represents that Cheng Cohen performed the following work on September 13 and

14:

| | | | | | | |
|---|---|---|---|---|---|---|
| | | investigator | | | | |
| 9/13/2013 | MCM | 1021.004 / Kumon North America, Inc. Demetrio Timban Matter Work on motion for an order to show cause, including research and drafting motion and supporting witness declarations for Bello, Bojekian, and Johanson, and exhibits | t | 7.5000 | 315.0000 | 2,362.50 |
| 9/14/2013 | MCM | 1021.004 / Kumon North America, Inc. Demetrio Timban Matter Work on motion for order to show cause and supporting declarations; communicate with client re same | t | 0.5000 | 315.0000 | 157.50 |

(<u>See</u> Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban challenges these billing

entries in their entirety arguing that the work performed was not in connection with the contempt

motion.  (Timban Opp'n Br. 3, Doc. No. 40.)   Again, Kumon claims in their brief in response to

Mr. Timban's Opposition, that the motion for an order to show cause was actually the motion to

hold Mr. Timban in contempt.  (Kumon Resp. in Supp. of Contempt Mot., Doc. No. 42.)

First, with regard to MCM's hours on September 13, although s/he references working on

the "order to show cause," s/he also notes that s/he drafted supporting witness declarations for

"Bellow, Bojekian, and Johanson, and exhibits."  The Court notes that the Johanson, Bello, and

Bojekian declarations were all submitted in connection with Kumon's motion for contempt, and

a review of these declarations makes plain that all of them serve to document Mr. Timban's

noncompliance with the August 26 Order.  Illustratively, the August 26 Order stated that

> all labels, signs, prints, packages, wrappers, receptacles, logo items, and advertisements
> in the possession of Defendant, his agents, servants and employees, and any person in
> active concert or participation with him, bearing any of the Kumon Marks, and all plates,
> molds, and other means of making the same, if any, be delivered to Kumon at [Mr.
> Timban's] cost.

(Doc. No. 15.)  Johanson averred that when he met with Mr. Timban in August he was given approximately twelve (12) boxes of Kumon materials.  (Mot. for Contempt, Johanson Decl. ¶¶ 6-7, Doc. No. 24-2.)  He further stated that he did a walk-through of the Medford Center in order to determine whether any Kumon materials remained, and Mr. Timban told him that the twelve (12) boxes he turned over to Johanson accounted for all Kumon materials that were in his possession.  (Id. ¶¶ 7-8.)

Bello declared that when she conducted her site investigation of the Medford Center an employee provided her with various Kumon materials, including a Kumon parent guide.  (See Mot. for Contempt, Raquel Bello Decl., Doc. No. 24-3.)  Viewing these declarations in tandem, it is plain that both were necessary to properly show that Mr. Timban was in contempt of the August 26 Order, and that Kumon's efforts to document this noncompliance fall within the scope of attorneys' fees and expenses awarded to Kumon in the October 15 Order.

Although the Court declines to order Mr. Timban to reimburse Kumon for MCM's work on the "order to show cause," he will be responsible for the remainder of MCM's work on September 13.  Accordingly, the Court will reduce MCM's September 13 billing entry from 7.5 hours to 4.5 hours.  Mr. Timban will be responsible for attorneys' fees in the amount of $1417.50 for this date.

As for MCM's work on September 14, although s/he references "declarations," and these may be the Bello, Bojekian, and Johanson declarations from September 13, this billing entry lacks the necessary specificity such that the Court can conclude that MCM's work was in connection with the contempt motion and not the "order to show cause."  Accordingly, Mr. Timban will not be required to reimburse Kumon for MCM's work performed on this date.  See Apple Corps. Ltd., 25 F. Supp. 2d at 487 (finding that the Court should "disallow" recovery for

"entries . . . which lack the specificity necessary for the Court to determine whether the hours were expended in connection with the contempt motion").

    3.  <u>September 16, 2013</u>

Kumon represents that Cheng Cohen performed the following work on September 16:

| 9/16/2013 | ALS | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Researched motion for contempt and reconsideration of covenant not to compete where franchisee continues to violate injunction | t | 2.0000 | 175.0000 | 350.00 |
|---|---|---|---|---|---|---|
| 9/16/2013 | TJM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Attention to R. Bello declaration and exhibits; attention to Stephen Bojekian declaration and exhibits in anticipation for filing. | t | 0.8000 | 175.0000 | 140.00 |
| 9/16/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Finalize motion for rule to show cause and declarations of Johanson and Bello in support; communicate with client re same | t | 3.4000 | 315.0000 | 1,071.00 |

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban requests that ALS's total hours be reduced in full and that TJM and MCM's hours be reduced by half.  (Timban Opp'n Br. 3, Doc. No. 40.)

      ALS's hours will be reduced from 2.0 hours to 1.0 hour.  Mr. Timban is responsible for the portion of ALS's time relating to the "motion for contempt," however, he is not responsible for any work performed in connection with reconsideration of the "covenant not to compete." Although Mr. Timban argues that ALS's work is duplicative of the work s/he performed on September 12, the Court does not agree.  It is not unreasonable to think that ALS might have needed to conduct additional research in order to finalize the contempt motion, which was filed with the Court that same day.  See Apple Corps. Ltd., 25 F. Supp. 2d at 485 ("the court has wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours expended or duplication of efforts" as long as "the party opposing the fee petition meets its 'burden of proving that an adjustment is necessary'") (quoting

Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Ursic v. Bethlehem Mines, 719 F.2d 670, 676-77 (3d Cir. 1983)).  Consequently, Mr. Timban will be responsible for $175.00 in attorneys' fees for ALS's work on September 16.

As for the 0.8 hours of work performed by TJM, this billing entry will not be disturbed. Although TJM's work is not characterized as being in connection with Kumon's contempt motion, the "R. Bello declaration and exhibits" and "Stephen Bojekian declaration and exhibits" were documents filed in support of Kumon's motion to hold Mr. Timban in contempt. Accordingly, this fee is proper and Mr. Timban will be responsible for $140.00 in attorneys' fees for TJM's work on September 16.

As for the third and final billing entry on September 16, the Court finds that MCM's 3.4 hours should be partially reduced because part of this entry discusses a "motion for rule to show cause" rather than Kumon's contempt motion.  Again, however, work performed in connection with the Johanson and Bello declarations is properly reimbursable.  Accordingly, the Court will reduce MCM's hours from 3.4 hours to 2.4 hours, and thus Mr. Timban will be responsible for $756.00 in attorneys' fees for MCM's work on September 16.

4. September 17, 2013

Kumon represents that Cheng Cohen performed the following work on September 17:

| 9/17/2013 | TJM | 1021.004 / Kumon North America, Inc. Demetrio Timban Matter Attention to Johanson, Bello and Bojekian declarations and exhibits. | t | 0.5000 | 175.0000 | 87.50 |
|---|---|---|---|---|---|---|

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban states that any work billed in connection with the Johanson declaration should be omitted from the final bill because, in his view, this declaration did not relate to Kumon's motion for contempt, but rather dealt with Johanson's meeting with Mr. Timban during which they discussed Mr. Timban's obligation to

return Kumon materials.  Mr. Timban then argues that any work billed in connection with the preparation of the Bello declaration should also be omitted from the final bill because Bello's declaration dealt with Kumon's efforts to have the Court revisit its earlier ruling on the covenant not to compete.  (Timban Opp'n Br. 4, Doc. No. 40.)  As already addressed by the Court above, and ad nauseam, the Court disagrees with this argument and thus this portion of the bill will remain undisturbed.

     5.  <u>September 25, 2013</u>

     Kumon represents that Cheng Cohen performed the following work on September 25:

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/25/2013 | FAC | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Correspond w/NK via email and vmail; correspond<br>w/PG re teleconf w/Judge Kugler; prepare for and<br>participate in hearing | t | 1.2000 | 390.0000 | 468.00 |
| 9/25/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Prepare for court hearing re motion for contempt and<br>attendance at same; communicate with client re<br>preparation for contempt evidentiary hearing | t | 0.2000 | 315.0000 | 63.00 |

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban requests that the 1.2 hours of work performed by FAC be reduced by two-thirds since he is "unaware" of what hearing this is in reference to and does not know who "NK" is.  (Timban Opp'n Br. 4, Doc. No. 40.)  Although Kumon explains in their reply brief that "NK" is Kumon's "in-house counsel," it does not expressly state that FAC's "[c]orrespond[ence] w/ NK via email and vmail" was in any way related to Kumon's contempt motion.  (Kumon Resp. in Supp. of Contempt Mot. n.5, Doc. No. 42.)  The Court estimates that these tasks took approximately 0.2 hours and thus it will reduce FAC's hours by that amount.

     As for Mr. Timban's protests about the hearing conducted on September 25, the Court finds that he is responsible for the time FAC spent preparing for and participating in that hearing. Although FAC categorized the telephone conference held on September 25 as a "hearing," it is

clear to the Court that this "hearing" is the telephone conference held for purposes of scheduling

oral argument on Kumon's motion to hold Mr. Timban in contempt.  (Mins. of Proceedings,

Doc. No. 27); see also Apple Corps. Ltd., 25 F. Supp. 2d at 487 (finding that "some entries are

specific enough to allow the Court to determine whether the hours were devoted to the contempt

motion").  Accordingly, after reducing FAC's hours by 0.2, Mr. Timban will be responsible for

$453.00 in attorneys' fees for work performed on this date.

### 6. October 3 and 4, 2013

Kumon represents that Cheng Cohen performed the following work on October 3 and 4:

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/3/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Investigation for contempt hearing | t | 0.3000 | 315.0000 | 94.50 |
| 10/4/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Fact investigation re contempt | t | 0.1000 | 315.0000 | 31.50 |

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban argues that these billing entries

lack "specificity."  (Timban Mem. in Opp'n 4, Doc. No. 40.)  The Court disagrees.  MCM's

description of the work s/he performed on both of these dates is sufficient; therefore, Mr. Timban

is responsible for $126.00 in attorneys' fees, the total amount billed for October 3 and 4.  See

Apple Corps. Ltd., 25 F. Supp. 2d at 486 ("Summaries showing the daily activities of each

attorney and paralegal, the hours consumed and a general description of the tasks performed are

sufficient to meet the standards of specificity.") (citing Keenan v. City of Philadelphia, 983 F.2d

459, 473 (3d Cir. 1992)).

### 7. October 7, 2013

Kumon represents that Cheng Cohen performed the following work on October 7:

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/7/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Preparation for contempt hearing, including drafting<br>witness examination outlines and preparing exhibits | t | 2.4000 | 315.0000 | 756.00 |

(Kumon Mot. Att'ys Fees Ex. A.)  Mr. Timban requests that the amount due for this date be

reduced because the billing entry is "cryptic" and "overly broad." (Timban Mem. in Opp'n 4,

Doc. No. 40.)  The Court disagrees and finds that MCM's description of the work s/he performed

on this date is sufficiently specific.  As such, Mr. Timban is responsible for $756.00 in attorneys'

fees, the total amount billed for October 7.

        8.   <u>October 8, 2013</u>

    Kumon represents that Cheng Cohen performed the following work on October 8:

| 10/8/2013 | TJM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Attention to brief in opposition filed by Timban. | t | 0.2000 | 175.0000 | 35.00 |
| 10/8/2013 | EAF | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Organized/prepared materials and binder for<br>upcoming oral argument re Plaintiff's Motion to Hold<br>Timban in Contempt. | t | 4.0000 | 175.0000 | 700.00 |
| 10/8/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Preparation for contempt hearing, including drafting<br>witness exam outlines, review and analysis of<br>defendant's opposition, make technology arrangment<br>with court for exhibits, and compiling fees and costs<br>information | t | 2.3000 | 315.0000 | 724.50 |

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban requests that the work performed

by EAF and MCM be reduced to 1.0 hour.  (Timban Opp'n Br. 4-5, Doc. No. 40.)

    First, Mr. Timban argues that there is "no way of determining what trial materials were

prepared and organized" by EAF, and this is relevant due to the fact that "a large portion of what

was prepared for and presented at the contempt hearing was for issues not encompassed in the

Order awarding fees."  (<u>Id.</u>)  Second, Mr. Timban argues that MCM's work on October 8 was

duplicative of work previously performed.

    As to Mr. Timban's first point, the Court agrees, but thinks that Mr. Timban's requested

reduction is overly excessive.  Accordingly, the Court will reduce EAF's time by 1.0 hour and

MCM's time by 0.5 hours; this better reflects the time these two individuals likely spent on matters outside the scope of the October 15 Order.

As for Mr. Timban's second point, the Court does not agree that MCM's work was duplicative.  See Jewett v. IDT Corp., No. 04-1454, 2007 WL 1488257, at *2 (D.N.J. May 18, 2007) (rejecting an allegation of duplicative work because plaintiff failed to sufficiently explain how defendant's attorneys' hours duplicated the substance of work performed).

Consequently, Mr. Timban is responsible for $1127.00 in attorneys' fees billed on October 8.  This represents the sum of TJM, EAF, and MCM's time after the above-discussed deductions.

### 9.   October 9, 2013

Kumon represents that Cheng Cohen performed the following work on October 9:

| 10/9/2013 | MCM | 1021.004 / Kumon North America, Inc. Demetrio Timban Matter Work on contempt hearing preparation; including witness preparation and finalizing hearing examination outlines and exhibits | t | 1.0000 | 315.0000 | 315.00 |
|---|---|---|---|---|---|---|

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban argues that this billing entry is duplicative of work previously performed.  (Timban Opp'n Br. 6, Doc. No. 40.)  The Court disagrees.  It is reasonable to think that an attorney would continue to prepare for an upcoming hearing, and the fact that MCM spent another hour doing so on October 9 does not merit a reduction in his/her resulting fees.  As such, Mr. Timban is responsible for $315.00, the total amount billed for October 9.

10. <u>October 10, 2013</u>

Kumon represents that Cheng Cohen performed the following work on October 10:

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/10/2013 | MCM | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Discuss sign removal with witness and research re<br>Timban's facebook pages in preparation for contempt<br>hearing | t | 0.6000 | 315.0000 | 189.00 |
| 10/10/2013 | FAC | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Prepare for hearing on 10/11 | t | 4.5000 | 390.0000 | 1,755.00 |

(Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2.)  Mr. Timban argues that the work performed

by FAC on this date should be reduced to 1.0 hour due to the fact that Kumon "was only

successful in establishing that [he] was in contempt for failing to timely remove a sign and

failing to shut down the Kumon telephone number" and that the entry "is unclear as to how much

time should be allocated to prepping for the issues allowable under the Order."  (Timban Opp'n

Br. 5, Doc. No. 40.)  The Court agrees that the total time billed should be reduced, however, it

finds that a reduction of 1.5 hours is far more reasonable since the issues addressed by the parties

that were not within the scope of the October 15 Order accounted for a much smaller portion of

the hearing.  As such, after this reduction, Mr. Timban is responsible for $1359.00 in attorneys'

fees for work performed on this date; $1170.00 attributed to FAC and $189.00 to MCM.

11. <u>October 11, 2013</u>

Kumon represents that Cheng Cohen performed the following work on October 11:

| | | | | | | |
|---|---|---|---|---|---|---|
| 10/11/2013 | FAC | 1021.004 / Kumon North America, Inc.<br>Demetrio Timban Matter<br>Attend hearing and prepare | t | 6.0000 | 390.0000 | 2,340.00 |

(Kumon Mot. Att'ys Fees Ex. A.)  Mr. Timban argues that FAC's time should be reduced from

6.0 hours to 2.5 hours because Kumon was only partially successful at the October 11 hearing;

thus, "only half the hearing time, [2.5 hours], should be allowable."  (Timban Opp'n Br. 6, Doc.

No. 40.)  He also argues that the rest of the entry should be deducted from the final bill for being

"excessive and duplicative."  (Id.)  The Court agrees that Kumon should not be reimbursed for the full 6.0 hours since Cheng Cohen also argued for reconsideration of the Court's previous decision in which it declined to enforce the parties' covenant not to compete, an issue outside the scope of the October 15 Order.  However, the Court finds Mr. Timban's proposal is too extreme.  Accordingly, the Court will reduce FAC time by 1.5 hours and Mr. Timban will be responsible for $1,755.00 for work performed on October 11.

### 12. Other Fees

Lastly, Mr. Timban does not challenge Cheng Cohen's FedEx fees incurred on September 18 and 21, Lexis fees incurred on September 30, airfare incurred on October 5, hotel charges incurred on October 12, and cab fare incurred on October 11.  (See Kumon Mot. Att'ys Fees Ex. B, Doc. No. 35-3.)  Thus, Mr. Timban is responsible for $838.39, the total amount billed for these expenses.

### 13. Final Amount Due and Owing to Kumon Attributable to Cheng Cohen's Attorneys' Fees and Costs

The total bill for hours expended by Cheng Cohen is $12,539.50, (see Kumon Mot. Att'ys Fees Ex. A, Doc. No. 35-2), and the total bill for associated fees is $838.39, (see id. Ex. B, Doc. No. 35-3), totaling $13,377.89.  Upon factoring in the deductions and reductions described above, $9,392.89 is left due and owing to Kumon.

### B.  Bright Signs Inc.

In accordance with the October 15 Order, Kumon is entitled to reimbursement related to the removal of Kumon signage from the Medford Center.  According to Kumon's motion for attorneys' fees and costs, Kumon paid Bright Signs Inc. $395.90 to complete this task.  (See Kumon Mot. Att'ys Fees Ex. B, Doc. No. 35-3.)  As Mr. Timban does not challenge this expenditure, and admits that Kumon was successful in establishing that he was in violation of the

August 26 Order for failing to remove the sign in a timely manner, (Timban Opp'n Br. 5, Doc. No. 40), he will be responsible for the entire amount due and owing to Bright Signs Inc.  See Rode, 892 F.2d at 1183 (citing Bell v. United Princeton Pops., Inc., 844 F.2d 713, 720 (3d Cir. 1989) ("The district court cannot decrease a fee award based on factors not raised at all by the adverse party.")).

### C. Analytical Consulting Associates, LLC

Next, Kumon seeks reimbursement in the amount of $5,018.48, which it paid to Analytical Consulting Associates, LLC ("ACA") in recognition of Stephen Bojekian and Raquel Bello's investigation into whether Mr. Timban was in compliance with the August 26 Order. (Kumon Mot. for Att'ys Fees Ex. B, Doc. No. 35-3.)

Mr. Timban claims that this sum includes fees for unnecessary services as well as services outside the scope of the October 15 Order.  (Timban Opp'n Br. 6, Doc. No. 40.) Specifically, Mr. Timban argues that because the majority of the investigators' efforts were related to Kumon's attempt to enforce the parties' covenant not to compete—an issue that the Court considered and rejected—"one site visit and a fifteen minute brief of the field investigator and a small portion of the time billed for the court appearance should be granted," and he should only be responsible for $700.00 of ACA's bill.  (Id.)  The Court disagrees.

Just as attorneys' fees awards are "designed to compensate complainants for losses incurred as a result of [ ] contemnors' violations," so are awards that cover other expenses incurred in demonstrating a violation.  Robin Woods Inc., 28 F.3d at 401 (quoting Roe v. Operation Rescue, 919 F.2d 857, 869 (3d Cir. 1990)).  Thus, where a party is successful in proving contempt, it will be entitled to recover the expenses of investigating a violation of the related court order, its preparation for and participation in any subsequent contempt proceeding,

16

and all reasonable attorneys' fees incurred throughout this process.  See Apple Corps. Ltd., 25 F.

Supp. 2d at 500.

Here, the cost of investigative services provided by ACA is itemized and dated.  (Kumon

Mot. Att'ys Fees Ex. B 3-7, Doc. No. 35-3.)  It sets forth the investigators' tasks, the individual

billing rate for particular tasks, and lists the date each task was performed.  (Id.)  Tasks included,

inter alia, physical inspection of and interviews at the Medford Center and the preparation of

A/V equipment used during the physical inspection of the Medford Center.[1]  Although Mr.

Timban believes that part of the investigators' efforts were related to the covenant not to

compete, there is no basis for this conclusion.  Indeed, Ms. Bello's declaration established, inter

alia, that Kumon signage remained posted at the Medford Center, Mr. Timban had continued to

use Kumon materials even after he represented that all materials had been returned to Mr.

Johanson, and that Mr. Timban's associates continued to represent that the Medford Center was

"the same" as Kumon.  (See Kumon Mot. for Contempt, Raquel Bello Decl. ¶¶ 5-7, Doc. No. 24-

3.)

Further, Mr. Bojekian's declaration establishes that he took photographs of the outside of

the Medford Center and that these photographs reflect the fact that Mr. Timban had yet to

remove a Kumon sign at the street entrance of the parking lot for the Medford Center, and a

Kumon sign outside the front entrance (above the doorway) of the Medford Center.  (See id.,

Stephen Bojekian Decl. ¶¶ 3-6, Doc. No. 24-4.)  This work is plainly reimbursable pursuant to

the October 15 Order; indeed, it specifically demonstrates Mr. Timban's violation of the August

26 Order and necessarily supports Kumon's contempt motion.

Accordingly, Mr. Timban is responsible for the total amount due and owing to ACA.

---

[1] The Court notes that Kumon submitted a video recording of this physical investigation in connection with its Motion for Contempt.  (See Mot. for Contempt, Raquel Bello Decl. Ex. 1, Doc. No. 24-3.)

### D. Peckar & Abramson, P.C.

Peckar & Abramson ("Peckar"), local counsel retained by Kumon, submitted a bill of $1,959.00 for their work performed in connection with the contempt motion. (Kumon Mot. Att'ys Fees, Certification of Patrick J. Greene 2, Doc. No. 35-4.) Peckar's bill accounts for 5.6 hours billed by an associate at an hourly rate of $285.00, and a partner at an hourly rate of $450.00. (Id.) In connection with the contempt motion, Peckar advised Kumon on local legal requirements and reviewed and revised submissions to the Court so that they would be in compliance with local rules. (Id.)

Mr. Timban claims that all of the work performed by Peckar should not have taken more than three hours; thus, its billing entries are excessive. (Timban Opp'n Br. 7, Doc. No. 40.) Mr. Timban further objects to the Mr. Patrick Greene's $450.00 hourly rate contending that the work he performed was not overly complex, and thus an hourly rate of "$375 is more than generous." (Id.) Mr. Timban does not object to the hourly rate charged by the Peckar associate.

### 1. The Lodestar Method

The Supreme Court has determined that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this calculation is called the lodestar, id., which is assumed to yield a reasonable fee, Washington v. Philadelphia Cnty. Ct. Com. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557 (1992)). The party seeking attorneys' fees may establish reasonableness by submitting affidavits setting forth hours worked and its claimed rates. See Apple Corps. Ltd., 25 F. Supp. 2d at 485. The burden then shifts to the party opposing the attorneys' fees request to contest either the reasonableness of the hours or the rates claimed. Id.

Once the opposing party has met this burden, "the court has wide discretion" to determine whether the number of hours reported are reasonable, id., and whether the claimed rates are in accordance with prevailing market rates in the relevant community, Rode, 892 F.2d at 1183 (citing Blum v. Stenson, 4665 U.S. 886, 895 (1984)).

### a.  The reasonableness of the number of hours worked

As discussed, a request for attorneys' fees must be accompanied by evidence supporting the number of hours worked.  Thus, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  Hensley, 461 U.S. at 433.  Further, "hours are not reasonably reported if they are excessive, redundant, or otherwise unnecessary."  Rode, 892 F.2d 1183 (citing Hensley, 461 U.S. at 433).

Mr. Timban claims that Peckar's work should not have taken more than three hours and as a result, the entries submitted "represent overbilling on hours and undoubtedly are for work outside the scope of the Order."  (Timban's Opp'n Br. 7, Doc. No. 40.)  The Court disagrees.

Here, Peckar billed a total of 5.6 hours for its services.  (Kumon Mot. for Att'ys Fees, Certification of Patrick J. Greene at 2, Doc. No. 35-4.)  The Court finds that 5.6 hours, split between an associate and a partner, advising Kumon on local legal requirements and on reviewing and subsequently revising submissions related to the contempt motion for local compliance is not excessive.  The Court will decline to reduce the number of hours that Peckar billed.

### b.  The reasonableness of Mr. Greene's hourly rate

As already noted, Mr. Timban objects to Mr. Greene's $450.00 hourly rate arguing that a rate of $375.00 per hour is "more than generous"  (Timban Opp'n Br. 7, Doc. No. 40.)

"The starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." Pub. Interest Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).  The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community.  See, e.g., Blum, 465 U.S. at 895-96 n.11; Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997); Washington, 89 F.3d at 1035; Rode, 892 F.2d at 1183.

The fee applicant's burden may be satisfied by the submission of affidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community.  See Washington, 89 F.3d at 1036.  The burden then shifts to the party opposing the fee application to produce affidavits or other submissions which create an issue as to the reasonableness of the requested hourly rate.  See id.  If the fee applicant fails to meet its initial burden, or if the opposing party challenges the fee applicant's proffer, the determination of the appropriate market rate is vested within the court's discretion.  See Rode, 892 F.2d at 1183; see also Washington, 89 F.3d at 1036.  The Court must assess the experience, skill and reputation of the attorneys and compare their rates to the rates in the relevant market for similar services by attorneys of comparable experience, skill and reputation.  See Rode, 892 F.2d at 1183 (citations omitted).

Here, neither Kumon nor Peckar submitted affidavits detailing the rates customarily charged by partners at New Jersey law firms.  Indeed, the only evidence in support of Mr. Greene's hourly rate is a footnote in Kumon's reply brief stating that "[t]he rate of partner Patrick J. Greene, Jr. is the customary rate in the area."  (Kumon Resp. in Supp. of Contempt Mot. n.3, Doc. No. 42.)  Further, although Mr. Timban has challenged Mr. Greene's hourly rate, he has failed to offer any affidavits or other materials demonstrating that $375.00 is more

reasonable.  See Rode, 892 U.S. at 1183 ("the party opposing the fee award then has the burden

to challenge, by affidavit or brief with sufficient specificity") (citing Bell, 884 F.2d 713 (3d Cir.

1989)).

As neither party provided this Court with materials helpful to the resolution of this issue,

it is within the Court's discretion to determine the appropriate market rate.

"An examination of hourly rates permitted in fee shifting cases in New Jersey shows a

good deal of variation from experienced attorneys."  Port Drivers Fed'n 18, Inc. v. All Saints,

No. 09-868, 2011 WL 3610100, at *4 (D.N.J. Aug. 16, 2011).  In determining appropriate rates,

courts often look to years of experience and geographic location.  See U.S. ex rel. Simring v.

Univ. Physician Assocs., No. 04-3530, 2012 WL 10033888, at *7 (D.N.J. Oct. 2, 2012), report

and recommendation adopted as modified, 2013 WL 6628223 (D.N.J. Aug. 22, 2013) (finding

that a requested $450 hourly rate for an attorney practicing in Montclair, New Jersey with over

30 years of experience was reasonable); Port Drivers, 2011 WL 3610100, at *4 (finding that a

rate of $475 was a reasonable hourly rate for a partner practicing in Newark); Pretlow v.

Cumberland Cnty. Bd. of Soc. Servs., No. 04-2885, 2005 WL 3500028, at *4 (D.N.J. Dec. 20,

2005) (holding that a reasonable rate for an attorney with 15-20 years of experience in the

relevant Philadelphia/Camden market is $250 per hour).

Here, Peckar's New Jersey office is located in River Edge, New Jersey—which is

approximately twenty miles from Newark and 106 miles from Camden.[2]  And, according to

Peckar's website, Mr. Greene has over thirty (30) years of experience.  See Patrick J. Greene, Jr.,

http://ww.pecklaw.com/ourpeople/bio/patrick_j._greene_jr (last visited June 27, 2014).

---

[2] A court may take judicial notice of geographic distances.  See Mondaca-Vega v. Holder, 718 F.3d 1075, 1085 (9th
Cir. 2013).  The distance calculated supra was calculated using Google Maps (www.google.com/maps), which is a
common practice.  See, e.g., Hartford Life Ins. Co. v. Rosenfeld, No. 05-5542, 2007 WL 2226014, at *8 n.5 (D.N.J.
Aug. 1, 2007).

In light of the Court's observation that partners practicing in and around Newark, New Jersey tend to command a higher hourly rate than partners practicing in and around Camden, New Jersey, and that a rate of $450.00 is not unreasonable, the Court declines to reduce Mr. Greene's hourly rate.

Accordingly, $1959.00 remains due and owing to Peckar; $969.00 of that sum is attributed to Peckar's associate who billed 3.4 hours at a rate of $282.00, and $990.00 of that sum is attributed to Mr. Greene who billed 2.2 hours at a rate of $450.00.

## IV.    CONCLUSION

Upon review and consideration of Kumon's motion for attorneys' fees and costs, and after making all necessary deductions, the Court will **GRANT WITH MODIFICATION** Kumon's motion.  Accordingly, the Court finds that Mr. Timban is responsible to Kumon for the following attorneys' fees and costs:

| | |
|---|---|
| Cheng Cohen, LLC: | $9,392.89 |
| Bright Signs, Inc.: | $395.90 |
| Analytical Consulting Associates, LLC: | $5,018.48 |
| Peckar & Abramson, P.C.: | $1,959.00 |
| **Total:** | **$16,766.27** |

Dated: 6/27/2014                                         s/ Robert B. Kugler
                                                                   ROBERT B. KUGLER
                                                                   United States District Judge

22